Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| STEVEN SANABRIA OJEDA<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrido | KLRA202400449 | REVISIÓN JUDICIAL Procedente del Departamento de Corrección y Rehabilitación<br><br>Reconsideración Núm.: ICG-687-2024<br><br>Sobre: Solicitud de Servicio, correspondiente al área Socio Penal |

Panel integrado por su presidenta, la Juez Brignoni Mártir, la Jueza Álvarez Esnard y la Jueza Prats Palerm

Álvarez Esnard, jueza ponente

## SENTENCIA

En San Juan, Puerto Rico, a 3 de octubre de 2024.

Comparece Steven Sanabria Ojeda (señor Sanabria Ojeda o el Recurrente) y solicita la revocación de la *Resolución de Reconsideración,* emitida y notificada el 10 de julio de 2024 por la Sra. Melissa Ruiz Sepúlveda, Coordinadora Regional de la División de Remedios División de Remedios Administrativos (División de Remedios) del Departamento de Corrección y Rehabilitación (Departamento de Corrección). Mediante la referida *Resolución de Reconsideración* la Coordinadora Regional de la División de Remedios **modificó** la *Respuesta al Miembro de la Población Correccional* emitida por el evaluador de la División de Remedios a la *Solicitud de Remedio Administrativo* (Núm. ICG-687-2024) presentada por el Recurrente. A su vez, **confirmó** aquellos extremos de la Respuesta emitida en la cual se denegó al señor Sanabria Ojeda su solicitud de imposición de medidas disciplinarias a la Sra. Elba M. Ruiz, Técnica de Servicios Sociopenales, referente al proceso utilizado por esta para la notificación de la *Resolución* emitida el 2

de febrero de 2024 por la Coordinadora del Programa de Desvíos, la Sra. Selma M Ríos.

Por los fundamentos que expondremos a continuación, **modificamos** aquellos extremos de *Resolución en Reconsideración* en los que la Coordinadora de la División de Remedios concluye que la Sra. Elba M. Ruiz entregó el documento al Recurrente en el término requerido y **confirmamos** los demás extremos de la *Resolución en Reconsideración* en los que finalmente concluye que la División de Remedios carece de facultad para sancionar a la Técnica de Servicios Sociopenales.

I

El 17 de mayo de 2024, el señor Sanabria Ojeda presentó *Solicitud de Remedio Administrativo* ante la División de Remedios. En la misma, solicitó la imposición de medidas disciplinarias a la Sra. Elba M. Ruiz, Técnica de Servicios Sociopenales conforme a lo dispuesto en el Art. V, Inciso 8 del *Reglamento del Programa Integral de Reinserción Comunitaria* aprobado el 9 de agosto de 2023, Reglamento Núm. 9488, y en el *Manual para la Aplicación de Medidas Correctivas y Disciplinarias a los Empleados del Departamento de Corrección y Rehabiliitación.*[1] En ajustada síntesis, el Recurrente alegó en la *Solicitud de Remedio Administrativo* que el 2 de febrero de 2024, la Sra. Selma Ríos Calderón, Coordinadora del Programa de Desvíos, emitió Resolución en relación al programa religioso y al programa de pases extendidos con monitoreo electrónico y que la misma fue notificada el 7 de mayo de 2024, noventa y cinco (95) días después de la *Respuesta de la Planilla de Información para Evaluar Candidatos Para el Programa de Pase Extendido con Monitoreo Electrónico* ( Respuesta).

---

[1] *Véase* Anejo IV del *Recurso de Revisión,* página 9 del Apéndice.

Mediante *Respuesta al Miembro de la Población Correccional* emitida y notificada el 6 de junio de 2024, el Evaluador de la División de Remedios indicó al señor Sanabria Ojeda que su remedio no podía ser trabajado por la Oficina de Remedios Administrativos en relación a su solicitud de imposición de medidas disciplinarias a Sra. Elba M. Ruiz, Técnica Técnico de Servicios SocioPenales asignada, referente al procedimiento utilizado por dicha funcionaria para notificarle la decisión de la Sra. Selma Ruiz. Además, orientó al Recurrente a solicitar una entrevista con la Sra. Ana C. Liceaga, encargada de Área Socio Penal para poder hacer su reclamo.[2]

En desacuerdo, el 17 de mayo de 2024, el señor Sanabria Ojeda presentó *Solicitud de Reconsideración* en la que arguyó que la *Respuesta al Miembro de la Población Correccional* emitida por la División de Remedios no atendió su solicitud la cual emana de lo dispuesto en el Art. V, inciso 8 del, Reglamento Núm. 9488. Argumentó además, que procedía la imposición de una medida disciplinaria a la Sra. Elba M. Ruiz al amparo del *Manual para la Aplicación de Medidas Correctivas y Disciplinarias a los Empleados del Departamento de Corrección y Rehabilitación.* Ello, como consecuencia de la notificación tardía de la denegatoria de su petitorio al amparo del *Reglamento del Programa Integral de Reinserción Comunitaria* Reglamento Núm. 9488, el 7 de mayo de 2024, Específicamente noventa y cinco (95) días después de haber sido emitida no empece el Inciso 8 del Artículo V del *Reglamento del Programa Integral de Reinserción Comunitaria,* Reglamento Núm. 9488 del 9 de agosto de 2023, dispone que cuenta con un término de cinco (5) días para ello. [3]

El 10 de julio de 2024, la Sra. Melissa Ruiz Sepúlveda, Coordinadora Regional de la División de Remedios emitió *Resolución*

---

[2] *Véase* Anejo V del *Recurso de Revisión,* página 10 del Apéndice.
[3] *Véase* Anejo VI del *Recurso de Revisión,* página 11 del Apéndice.

*de Reconsideración* en la que modificó la Respuesta emitida para aclarar al Recurrente que tras discutir los señalamientos con la Sra. Elba Ruiz, Técnico de Servicios Sociopenales a cargo del caso del Recurrente, esta aclaró que ésta entregó el documento en el término requerido y que el Recurrente solo observó la fecha en que la Sra. Selma Ríos Caldero realizó la hoja de Respuesta de la Información Necesaria para Evaluar Candidato para el Programa de Pase extendido con monitoreo electrónico. Así modificada, la *Resolución de Reconsideración* confirmó la *Respuesta al Miembro de la Población Correccional* que denegó al Recurrente su solicitud de imposición de medidas disciplinarias a la Sra Elba Ruiz y concluyó que la División de remedios es el organismo administrativo cuyo objeto es que los confinados puedan presentar solicitudes de remedio sobre actos e incidentes que le afecten su bienestar físico, mental, seguridad personal o en su plan institucional.[4]

Inconforme, el Recurrente presentó el recurso de epígrafe y señala la comisión de los siguientes errores :

> ERRÓ EL D.C.R. AL NO INICIAR EL PROCEDIMIENTO QUE ESTABLECE EL MANUAL PARA LA APLICACIÓN DE MEDIDAS CORRECTIVAS Y DISCIPLINARIAS CONTRA LA SRA. ELBA M. RUIZ CONFORME AL REGLAMENTO 9488, 9 DE AGOSTO DE 2023. ART.V, INCISO NÚM.8.

> ERRÓ EL D.C.R. AL INDUCIR A ERROR AL PETICIONARIO AL EXPONER MEDIANTE RESPUESTA AL MPC NÚM. ICG-687-2024 QUE DEBE SOLICITAR UNA ENTREVISTA CON ANAC. LICEAGA PARA PODER HACER SU RECLAMO CUANDO YA SU RECLAMO HABÍA SIDO HECHO MEDIANTE SOLICITUD.

> ERRÓ EL D.C.R. AL NO ATENDER ADECUADAMENTE LA SOLICITUD DE REMEDIO NÚM. ICG-687-2024 IGNORANDO ASÍ QUE SU ACTUACIÓN ES UNA CONTRARIA AL REGLAMENTO PARA ATENDER LAS SOLICITUDES DE REMEDIO ADMINISTRATIVO RADICADAS POR LOS MIEMBROS DE LA POBLACIÓN CORRECCIONAL REGLAMENTO NÚM. 8583, EFECTIVO EL 3 DE JUNIO DE 2015 (REGLAMENTO NÚM. 8583 Y CONTRARIA A LA LEY PÚBLICA NÚM. 96-2476-(HR-10) "CIVIL RIGHTS OF INSTITUCIONALIZED PERSON ACT"

---

[4] *Véase* Anejo VII del *Recurso de Revisión,* páginas 14-16 del Apéndice.

ERRÓ EL DCR AL NO BASAR SU DETERMINACIÓN EN EVIDENCIA SUSTANCIAL, ERRÓ EN LA APLICACIÓN E INTERPRETACIÓN DE LAS LEYES Y LOS REGLAMENTOS QUE SE LE HA ENCOMENDADO ADMINISTRAR, LESIONANDO ASÍ LOS DERECHOS FUNDAMENTALES DEL RECURRENTE, AL ACTUAR ASÍ ARBITRARIA, CAPRICHOSA, IRRAZONABLE E ILEGALMENTE HABIENDO EMITIDO UNA DETERMINACIÓN CARENTE DE BASE RACIONAL Y CONTRARIA A DERECHO.

El 26 de septiembre de 2024, compareció ante nos el Departamento de Corrección, mediante *Escrito en Cumplimiento de Resolución.* En ajustada síntesis, el Departamento de Corrección sostiene que aún asumiendo para propósito de argumentar que la Técnica de Servicios Sociopenales incumplió con el término dispuesto en el inciso 8 del Artículo V del *Reglamento del Programa Integral de Reinserción Comunitaria,* Reglamento Núm. 9488 del 9 de agosto de 2023, para notificar su decisión al Recurrente, hubo justa causa y la División de Remedios carece de facultad para sancionarla. De igual forma, el Departamento de Corrección coincide con la *Respuesta al Miembro de la Población Correccional,* emitida por el Evaluador de la División de Remedios el 6 de junio de 2024 que orientó al Recurrente en cuanto al funcionario frente a quien este tiene que hacer su reclamo.

II

### A. *Estándar de Revisión Judicial de Determinaciones Administrativas*

"Es norma reiterada en nuestro ordenamiento jurídico que los tribunales apelativos debemos conceder deferencia a las decisiones de las agencias administrativas". *Torres Rivera v. Policía de PR,* 196 DPR 606, 626 (2016). Esto se debe "a la experiencia y el conocimiento especializado que éstas poseen sobre los asuntos que se les han delegado". *Íd.* . Las determinaciones de una agencia administrativa gozan de una presunción de corrección. *Graciani Rodríguez v. Garage Isla Verde,* 202 DPR 117, 128 (2019).

[L]os foros judiciales analizarán los aspectos siguientes: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial, y (3) si las conclusiones de derecho fueron correctas. *Capó Cruz v. Jta. de Planificación et al.,* 204 DPR 581, 591 (2020). (Cita omitida).

A tenor con lo anterior, los tribunales deben deferencia a las agencias administrativas salvo que: (1) las determinaciones no estén basadas en evidencia sustancial; (2) las conclusiones de derecho fueran incorrectas; (3) la agencia actuara de forma arbitraria, irrazonable o ilegal; o (4) que lesionara derechos fundamentales. *Super Asphalt v. AFI y otro,* 206 DPR 803, 819 (2021); *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 36 (2018). En ausencia de ello, "aunque exista más de una interpretación razonable de los hechos, procede que se valide la interpretación que realizó la agencia administrativa recurrida". *Super Asphalt v. AFI y otro, supra*; *ECP Incorporated v. OCS*, 205 DPR 268, 281-282 (2020).

Por consiguiente, la deferencia cede, por ejemplo, cuando la agencia no se fundamenta en evidencia sustancial. "A esos fines, evidencia sustancial es aquella prueba relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Capó Cruz v. Jta. de Planificación et al., supra.*

Es decir, como excepción los tribunales pueden intervenir con las determinaciones de hechos de una agencia *cuando no están sustentadas por el expediente*, ya que el foro judicial no debe sustituir su criterio por el del foro administrativo si hizo una interpretación razonable de los hechos. *OCS v. Point Guard Ins.*, 205 DPR 1005, 1027 (2020). (Citas y comillas omitidas). (Énfasis suplido). Por su parte, las determinaciones de derecho pueden ser revisadas en su totalidad. *Capó Cruz v. Jta. de Planificación et al., supra.*

### B Reglamento para atender las Solicitudes de Remedios Administrativos radicadas por los miembros de la población correccional

El 4 de mayo de 2015 el Departamento de Corrección y Rehabilitación aprobó el Reglamento Núm. 8583, (Reglamento Núm. 8583) para atender las solicitudes de remedios administrativos radicadas por los miembros de la población correccional". Este Reglamento Núm. 8583 tiene como objetivo "evitar o reducir la radicación de pleitos en los tribunales de justicia". La Regla III dispone que "[e]ste Reglamento será aplicable a todos los miembros de la población correccional [...] recluidos en todas las instituciones o facilidades correccionales bajo la jurisdicción del Departamento de Corrección y Rehabilitación".

La "Solicitud de Remedio" se define en el Reglamento Núm. 8583 como un "[r]ecurso que presenta un miembro de la población correccional por escrito, de una situación que afecte su calidad de vida y seguridad, relacionado con su confinamiento". A su amparo, la agencia tiene facultad "para atender toda Solicitud de Remedio radicada por los miembros de la población correccional en cualquier institución o facilidad correccional donde se encuentre[n] extinguiendo sentencia y que esté relacionada directa o indirectamente con: (a) **Actos o incidentes que afecten personalmente al miembro de la población correccional en su bienestar físico, mental, en su seguridad personal o en su plan institucional**; [y] (b) [c]ualquier incidente o reclamación comprendida bajo las disposiciones de este Reglamento ...". Reglamento Núm. 8583. (Énfasis suplido)

La petición será evaluada por un funcionario correccional y será resuelta finalmente por un Coordinador. Si el miembro de la población correccional está inconforme con la determinación del Coordinador, podrá presentar un recurso de revisión judicial al Tribunal de Apelaciones en un periodo de 30 días, según dispuesto

en la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, según enmendada. Reglamento Núm. 8583.

### C. *Reglamento del Programa Integral de Reinserción Comunitaria*, Reglamento Núm. 9488 del 9 de agosto de 2023

La Constitución del Estado Libre Asociado de Puerto Rico establece como política pública del Estado la reglamentación de las instituciones penales con el objetivo de facilitar la rehabilitación moral y social. Artículo IV, Sec. 19, LPRA Tomo I. Para dar cumplimiento a este mandato, la Asamblea Legislativa otorgó al Secretario o la Secretaria del Departamento de Corrección y Rehabilitación (DCR), entre otras atribuciones, la autoridad para adoptar, establecer, desarrollar e implementar reglas, reglamentos, órdenes, manuales, normas y procedimientos, con el propósito de supervisar el funcionamiento eficaz del Departamento y de los programas y servicios que ofrece. Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011, según enmendado (Plan de reorganización), 3 LPRA Ap. XVIII, Art. 7 (aa). Asimismo, le confirió la facultad de implementar programas que brinden servicios médicos y hospitalarios adecuados para la población correccional, dirigidos a la prevención de enfermedades y el diagnóstico y tratamiento de los pacientes. Plan de Reorganización, *supra*, Art. 7 (g).

En concordancia con lo anterior, el Secretario o la Secretaria del DCR tiene facultad para establecer programas que posibiliten a las personas que se encuentran confinadas cumplir parte de su sentencia fuera de la institución correccional. Estos programas de desvío deben contar con reglamentos que detallen los objetivos, la operación, los criterios y las condiciones para la concesión del privilegio. Plan de Reorganización, *supra*, Art. 16. Además, cada

reglamento debe incluir los criterios, condiciones y procedimientos para la revocación de este privilegio. *Íd.*

El Departamento de Corrección implementó el Programa Integral de Reinserción Comunitaria (Programa), que abarca los siguientes subprogramas: (1) Programas Comunitarios de Base Religiosa y de Fe; (2) Programas Comunitarios Seculares; (3) Restricción domiciliaria por incumplimiento a las órdenes del Tribunal, (4) Pase Extendido por Condiciones de Salud; y (5) Pase Extendido con Monitoreo Electrónico. A través de estos subprogramas, los miembros de la población correccional tienen la oportunidad de cumplir parte de su sentencia fuera de la institución correccional. El objetivo principal de estos proyectos es viabilizar tratamientos individualizados para contribuir a la rehabilitación de aquellas personas que han cometido delitos mediante una reinserción adecuada a la comunidad sin menoscabar la seguridad pública. *Reglamento del Programa Integral de Reinserción Comunitaria,* Reglamento Núm. 9488 del 9 de agosto de 2023 (Reglamento Núm. 9488), pág. 2. Cada solicitante debe cumplir con una serie de requisitos aplicables a cada subprograma, además de satisfacer los requisitos específicos correspondientes al subprograma al que aplique.

El Art. V establece el procedimiento general de evaluación y concesión de participación de la población correccional en el Programa Integral de Reinserción Comunitaria. En lo pertinente, el inciso núm. 8 el Art. V del Reglamento Núm. 9488 dispone expresamente lo siguiente:

> Artículo V
>
> 1...
>
> ...
>
> 8. **En los casos en que resulte desfavorable la recomendación para la concesión del privilegio, la División de Programas Comunitarios enviará la determinación final al Técnico de Servicios Socio Penales de la institución donde se encuentre el miembro**

**de la población correccional ubicado, quien en cinco (5) días laborables, le interpretará y notificará la determinación. El incumplimiento de este término, si no fuere por justa causa, podrá exponer al Técnico de Servicios Sociopenales a la imposición de medidas disciplinarias, conforme lo establece el *Manual para la Aplicación de Medidas Correctivas y Disciplinarias a los Empleados del DCR.***

(Énfasis suplido)

### D. *Manual para la Aplicación de Medidas Correctivas y Disciplinarias a los Empleados del Departamento de Corrección y Rehabilitación, (*Manual DCR-2019-04)

El *Manual para la Aplicación de Medidas Correctivas y Disciplinarias a los Empleados del Departamento de Corrección y Rehabilitación, (*Manual DCR-2019-04) aplica a todo el personal del Departamento de Corrección y "tiene el propósito de definir lo que son medidas correctivas y disciplinarias, implantar un sistema uniforme y progresivo para hacer más efectivo el proceso disciplinario, establecer procedimientos uniformes a seguir en casos de incumplimiento o negligencia por los empleados en el desempeño de sus labores, establecer las sanciones que se deban recomendar al Secretario del Departamento de Corrección y Rehabilitación en cada caso, informar al empleado cuáles son sus deberes y obligaciones como empleado y las sanciones que se pueden tomar en su contra en caso de incumplimiento." Artículo II y IV del Manual DCR-2019-04. El Artículo V inciso 25 del Manual DCR-2019-04 define "proceso disciplinario" como un "[p]roceso informal que se inicia con la formulación de cargos que permite la refutación de los mismos por el empleado y que podría culminar en la imposición de sanciones disciplinarias."

El Artículo VIII del Manual DCR-2019-04 establece además, el procedimiento para la imposición de medidas correctivas y acciones disciplinarias. En lo pertinente a las medidas correctivas, la Sección 8.3 (1) del Manual DCR-2019-04 dispone en cuanto a la advertencia oral que el supervisor citará al empleado por escrito a una reunión en la que discutirán los hechos que dan lugar a la

advertencia verbal y se redactará un informe o acta sobre el contenido de la reunión. El supervisor también podrá dar una advertencia escrita al empleado mediante la redacción de un documento en el que se relacionen los hechos, normas y las órdenes o disposiciones infringidas . Además se le entregará al empleado el original del documento y el supervisor ofrecerá una orientación al empleado en torno a la conducta que debe observar. Artículo 8.3 (2) del Manual DCR-2019-04.

Dispone el Artículo IX del Manual DCR-2019-04 que el procedimiento administrativo disciplinario comenzará con la presentación de una Querella e Investigación. Sobre estos extremos la Sección 9.1 inciso 1 del Manual DCR-2019-04 dispone expresamente lo siguiente:

Sección 9.1- Querella e Investigación

1. **Cuando la conducta de un empleado constituya una infracción a las normas establecidas que haga necesario la aplicación de medidas disciplinarias, el supervisor redactará un informe preliminar dentro de las veinticuatro (24) horas próximas a la fecha en que tuvo conocimiento de los hechos.** El supervisor, el superintendente o la persona autorizada por éste referirá el informe a la Oficina de Procedimientos Administrativos, Disciplina de Empleados o a la Oficina de Investigaciones del Sistema Correccional (O.I.S.C.), para la investigación correspondiente. La O.I.S.C. gestionará la autorización del Secretario o la persona en quien delegue para la investigación; con excepción de los caso de negligencia o maltrato institucional para las que no se requiere autorización del Secretario.

(Énfasis suplido)

La querella se radicará ante la Oficina de Procedimientos Administrativos, Disciplina de Empleados a Nivel Central. Dicha oficina evaluará y referirá la querella a la Autoridad Nominadora para la determinación de investigación a los agentes investigadores de la Oficina de Investigaciones del Sistema Correccional (O.I.S.C.). Sección 9.2 del Manual DCR-2019-04.

III

Es la contención principal del señor Sanabria Ojeda que incidió la División de Remedios del Departamento de Corrección al no iniciar el procedimiento disciplinario que establece el *Manual para la Aplicación de Medidas Correctivas y Disciplinarias* contra la Sra. Elba Ruiz, ya que este procedía conforme a lo dispuesto en el Art.V. Inciso Núm. 8 del Reglamento Núm. 9488. De igual forma, sostuvo que el Departamento de Corrección lo indujo a error en la Respuesta emitida en el caso ICG-687-2024 al exponer que para hacer su reclamo debía solicitar una entrevista con la Supervisora Ana C. Liceaga. Arguyó además, el Recurrente, que el Departamento de Corrección no atendió adecuadamente la Solicitud de Remedio Núm. ICG-687-2024, contrario a lo establecido en el Reglamento Núm. 8583, al no fundamentar su determinación en la evidencia sustancial que obra en el expediente.

Es preciso destacar, conforme señala el Recurrente, el Art.V Inciso 8 del Reglamento Núm. 9488, dispone expresamente que en los casos en que resulte desfavorable la recomendación para la concesión del privilegio-como lo fue en el caso del Recurrente-la División de Programas Comunitarios tenía que enviar la determinación final al Técnico de Servicios Socio Penales de la institución donde se encuentra el miembro de la población correccional ubicado, y éste <u>en cinco (5) días laborables, interpretará y notificará la determinación</u>. <u>El incumplimiento de este término, si no fuere por justa causa, podrá exponer al Técnico de Servicios Sociopenales a la imposición de medidas disciplinarias</u>, conforme lo establece el *Manual para la Aplicación de Medidas Correctivas y Disciplinarias a los Empleados del DCR.* (Manual DCR-2019-04)

De los documentos anejados a su Recurso de Revisión el Recurrente incluye la Respuesta de la Planilla de Información Necesaria para Evaluar Candidatos Para el Programa de Servicios

Religiosos y Seculares fechado **2 de febrero de 2024**, suscrito por la Sra. Elba Ruiz, Técnica de Servicios Sociopenales de la Institución Correccional Guerrero, y por la Sra. Selma Ríos Calderón, Coordinadora del Programa de Desvíos. Surge del expediente que en efecto dicha Respuesta denegó al señor Sanabria Ojeda su solicitud de servicios fundamentado en que se excluye del beneficio de Programas de Desvío el delito de Asesinato en Primer Grado por el cual el Recurrente cumple sentencia de reclusión y **fue notificada al Recurrente el 7 de mayo de 2024, tres meses después de haber sido emitida**.[5]

Sin embargo, el *Manual para la Aplicación de Medidas Correctivas y Disciplinarias a los Empleados del DCR* (Manual DCR-2019-04), al que alude el Recurrente y al que refiere el inciso 8 Art. V del Reglamento Núm 9488 en casos como este dispone que corresponde al supervisor del empleado atender el asunto objeto de la queja.  Es por ello, que <u>concluimos que no incidió la División de Remedios en su Respuesta al orientar al Recurrente de que debía informar a la supervisora de la Técnica Socio Penal para poder hacer su reclamo, al amparo del *Manual para la Aplicación de Medidas Correctivas y Disciplinarias a los Empleados del DCR* ya que dicho asunto no es objeto de ser adjudicado por la División de Remedios</u>. Sobre estos extremos tampoco incidió la Coordinadora de la División de Remedios  en la Resolución en Reconsideración, al concluir que no procede conceder al Recurrente el remedio solicitado.

Ahora bien, procede modificar la *Resolución en Reconsideración* recurrida únicamente en cuanto a la modificación que hizo la Coordinadora de la División de Remedios de la Respuesta emitida por el Evaluador y en la que le aclara al Recurrente  que tras discutir los señalamientos con la Sra. Elba Ruiz, Técnica de

---

[5] *Véase* Anejo II del Recurso de Revisión, páginas 5-6 del Apéndice.

Servicios Sociopenales a cargo del caso del Recurrente, esta aclaró que entregó el documento en el término requerido. Reiteramos que conforme a la Sección 8.2, 8.3 y 9.1 del *Manual para la Aplicación de Medidas Correctivas y Disciplinarias a los Empleados del DCR* (Manual DCR-2019-04) **corresponde al supervisor inmediato del empleado concernido <u>y no a ningún otro funcionario de la División de Remedios</u> <u>entrevistar a la empleada objeto de la queja del Recurrente por infracción al inciso 8 del Art. V del Reglamento Núm. 9488</u>, por <u>lo que concluimos que el asunto de la alegada infracción de la Sra. Elba M. Ruiz, no ha sido adjudicado todavía por el Departamento de Corrección.</u>**

De otra parte, es preciso destacar que conforme al Reglamento Núm. 8583, *supra* la División de Remedios es el organismo administrativo cuyo objeto es que los confinados puedan presentar solicitudes de remedio sobre actos e incidentes que le afecten su bienestar físico, mental, seguridad personal o en su plan institucional.

En el caso que nos ocupa, con estos antecedentes, es forzoso concluir que no hay fundamento ni base en el expediente para variar la determinación de la Coordinadora de la División de Remedios en la *Resolución en Reconsideración* de confirmar la Respuesta emitida por el Evaluador de la División de Remedios. Mediante ésta se orientó al Recurrente sobre el procedimiento a seguir para hacer el reclamo referente a la alegada infracción de la Sra. Elba M. Ruiz, Técnica de Servicios Sociopenales al inciso 8 del Art. V del Reglamento Núm. 9488.

Por los fundamentos que anteceden, resolvemos que la División de Remedios actuó dentro de los contornos de la reglamentación vigente al denegar la solicitud de remedios administrativos al Recurrente y **no adjudicar el reclamo de este referente a su solicitud de acción disciplinaria en contra de la**

**Sra. Elba M. Ruiz .** Técnica de Servicios Sociopenales. Recordemos que el Departamento "merece deferencia en la adopción y puesta en vigor de sus reglamentos, pues es la entidad con la encomienda de preservar el orden en las instituciones carcelarias". *Álamo Romero v. Adm. De Corrección,* 175 DPR 314, 334 (2009). Por consiguiente, procede modificar la Resolución en Reconsideración recurrida en cuanto concluye que la Sra. Elba Ruiz entregó el documento en el término requerido y sobre los demás extremos, en ausencia de argumentos del señor Sanabria Ojeda que impliquen un abuso de discreción del foro administrativo, resolvemos conforme a la norma de deferencia que rige la revisión de los procedimientos administrativos.

IV

Por los fundamentos anteriormente expuestos, los cuales hacemos formar parte de esta Sentencia modificamos la Resolución en Reconsideración emitida por la Coordinadora la División de Remedios y así modificada confirmamos los demás extremos Resolución en Reconsideración que deniegan al Recurrente el remedio solicitado de imposición de medida disciplinaria a la Sra. Elba Ruiz.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones